**Paula Corbin JONES, Plaintiff–Appellee,**

v.

**William Jefferson CLINTON, Defendant–Appellant,**

**Danny Ferguson, Defendant,**

**United States of America, et al., Amicus Curiae.**

Nos. 95–1050, 95–1167.

United States Court of Appeals, Eighth Circuit.

March 28, 1996.

RICHARD S. ARNOLD, C.J., and MORRIS SHEPPARD ARNOLD, and MURPHY, JJ., took no part in the consideration or decision of this case.

McMILLIAN, Circuit Judge, dissenting from the denial of the suggestion for rehearing en banc.

The majority opinion not only has put short pants on President William Jefferson Clinton, but also has succeeded in demeaning the Office of the President of the United States, recognized throughout the world as the most powerful office in the world, an office which, at this time, is grappling with world problems in Bosnia, Iran, China, Taiwan, Cuba, Russia, and most third-world nations, not to mention the myriad of domestic problems here at home. Never has there been a question of whether President Clinton is above the law and immune from suit, the question is only "when?" My colleagues, to my dismay, would put all the problems of our nation on pilot control and treat as more urgent a private lawsuit that even the appellant delayed filing for at least *three* years.

The panel opinion in this case unfortunately misinterprets the principles enunciated in *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (*Fitzgerald*). The panel opinion will allow judicial interference with, and control of, the President's time, at least in part. The ruling thus violates the separation of powers doctrine and should be reviewed by this court en banc. I dissent from the court's refusal to do so.

My reading of *Fitzgerald* discloses two separate rationales for the immunity granted to former President Richard Nixon. The first rationale focuses on the "public interest in providing an official 'the maximum ability to deal fearlessly and impartially with' the duties of his office." *Id.* at 752, 102 S.Ct. at 2702 (quoting *Ferri v. Ackerman*, 444 U.S. 193, 203, 100 S.Ct. 402, 408, 62 L.Ed.2d 355 (1979)). This rationale reflects the concern that the threat of a lawsuit could interfere with the President's ability to carry out his or her official duties. *Id.* "Among the most persuasive reasons supporting official immunity is the prospect that damages liability may render an official unduly cautious in the discharge of his official duties." *Id.* at 752 n.

32, 102 S.Ct. at 2702 n. 32. This is the official action rationale which confers immunity to a president from lawsuits even after completion of his or her term of office.

The second rationale applies to lawsuits, such as the present one, filed during the President's term but arising from conduct or events which are unrelated to the President's official duties. This rationale is not based upon the need for fearless and impartial decision making by the President but rather is based upon the need to allow the President to carry out his or her official duties free from unnecessary interference and distraction. As the Court stated in *Fitzgerald,* "[i]n view of the visibility of his office and the effect of his actions on countless people, the President would be an easily identifiable target for suits for civil damages." *Id.* at 753, 102 S.Ct. at 2703. The historical discussion of presidential immunity in note 31 of the *Fitzgerald* opinion emphasizes that such immunity rests in large measure on avoiding distractions from the official duties of the President. In part that note provides:

Justice Story, writing in 1833, held it implicit in the separation of powers that the President must be permitted to discharge his duties undistracted by private lawsuits. 3 J. Story, Commentaries on the Constitution of the United States § 1563, pp. 418–419 (1st ed. 1833) (quoted *supra,* at 2701–2702). Thomas Jefferson also argued that the President was not intended to be subject to judicial process. When Chief Justice Marshall held in *United States v. Burr,* 25 F.Cas. 30 (CC Va. 1807), that a subpoena *duces tecum* can be issued to a President, Jefferson protested strongly, and stated his broader view of the proper relationship between the Judiciary and the President: "The leading principle of our Constitution is the independence of the Legislature, executive and judiciary of each other, and none are more jealous of this than the judiciary. But would the executive be independent of the judiciary, if he were subject to the *commands* of the latter, & to imprisonment for disobedience; if the several courts could bandy him from pillar to post, keep him constantly trudging from north to south & east to west, and withdraw him entirely from his constitu-

tional duties? The intention of the Constitution, that each branch should be independent of the others, is further manifested by the means it has furnished to each, to protect itself from enterprises of force attempted on them by the others, and to none has it given more effectual or diversified means than to the executive." 10 The Works of Thomas Jefferson 404 n. (P. Ford ed.1905) (quoting a letter from President Jefferson to a prosecutor at the Burr trial) (emphasis in the original).

*Id.* at 750 n. 31, 102 S.Ct. at 2701 n. 31.

Judge Beam's concurring opinion in the present case illuminates the problem of judicial interference with the President's official duties. The consequence of the panel's decision is that now there will be a trial judge exercising some control over the President's schedule. As Judge Beam concludes:

I in no way seek to downplay the concerns outlined by the dissent. At the same time, I feel that Judge Bowman's opinion reasonably charts a fair course through the competing constitutional waters and does so without serious injury to the rights of any party. As I have attempted to stress, *nothing prohibits the trial judge from halting or delaying or rescheduling any proposed action by any party at any time should she find that the duties of the presidency are even slightly imperiled. With this understanding, I concur.*

72 F.3d at 1367 (emphasis added). Conversely, however, nothing prohibits the trial judge from ordering the President to appear, testify, provide discovery, answer numerous interrogatories and requests for admissions at the trial judge's almost unrestricted discretion. Indeed, figuratively, the courts may "bandy him from pillar to post." If that does not violate the separation of powers between the President and the judiciary, what does?

The Constitution of the United States provides in Article II, Section 1, "The executive power shall be vested in the President of the United States of America." Even assuming a trial judge of reasonably good judgment, judicial control over the sitting President of the United States as a defendant in an ongoing civil lawsuit must constitute a far greater

affront to our separation of powers principles than that which was at stake in the *Fitzgerald* case, where the defendant was not a sitting president.

In my opinion, Judge Ross got it exactly right when he wrote in his dissent:

> The *Fitzgerald* decision was derived from both the functional necessities of the President's execution of Article II duties, and the principle that no branch should be subject to crippling incursions by another branch. The Court's reasoning is highly instructive in the present case because it demonstrates the importance of insulating the President from the disruptive effects of private suits against him, whether based on official or unofficial acts.

72 F.3d at 1367.

Finally, the impact of the limited presidential immunity sought here by President Clinton is far less drastic than the immunity granted to former President Nixon in *Fitzgerald*. Although President Nixon was no longer in office at the time of that lawsuit, his immunity was absolute. It left the plaintiff without any remedy. That is not the case here. The appellant in the present action can pursue her claims after President Clinton leaves office. While delay may be unfortunate for the appellant, it is not necessarily prejudicial. She still retains her right to sue.[1] What must be of greatest concern in this controversy is the welfare of this nation—and indeed of the entire world—over which the President of the United States exerts such strong influence as "the office-holder [who] make[s] the most sensitive and far-reaching decisions entrusted to any official under our constitutional system." *Fitzgerald*, 457 U.S. at 752, 102 S.Ct. at 2702.

Although this court has refused to consider this important case en banc, I have every confidence that the issues of national concern in this case relating to the judiciary's relationship to the presidency will command the attention of the United States Supreme Court.

---

1. Clearly, if the President were granted limited immunity from suit for the duration of his presidency, the applicable statute of limitations would be tolled for the same time period.